Kim Michael COOK, Appellant,

v.

Hallie A. ROWLAND, Personal
Representative of the Estate of
James A. Rowland, Appellee.

No. S–9410.

Supreme Court of Alaska.

June 21, 2002.

Kim Michael Cook, pro se, and Susan Orlansky, Feldman & Orlansky, Anchorage, for Appellant.

Eric Jensen, Jensen & Jensen, Wasilla, and Kenneth J. Goldman, Law Office of Kenneth J. Goldman, Palmer, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Following the entry of a default judgment against him in excess of $7,000,000, Kim Michael Cook filed a peremptory challenge of the assigned judge and a motion to set aside the default judgment. The superior court rejected the peremptory challenge as untimely and refused to set aside the default judgment. Because three members of the court—Chief Justice Fabe, Justices Matthews and Bryner—have concluded that Cook has shown both excusable neglect and a potentially meritorious defense as to damages, we set aside the default judgment and remand for a redetermination of damages. Because three members of the court—Justices Eastaugh, Bryner, and Carpeneti—have concluded that Cook's peremptory challenge should be given effect, proceedings concerning the determination of damages on remand should be conducted before a different judge.

## II. FACTS AND PROCEEDINGS

In the early morning hours of May 15, 1999, Palmer Police Officer James Rowland approached a parked car in which Kim Michael Cook was sleeping. In the series of events that followed, which are not the immediate concern of this case, both men fired gunshots and both were hit. Officer Rowland died as a result of his injuries.

Cook was arrested and charged with first-degree murder in connection with Rowland's death. As a result of his own injuries, Cook was hospitalized and underwent two surgeries before being transferred to a maximum security cell at Cook Inlet Pretrial Facility.

On May 27, 1999, Hallie Rowland, Officer Rowland's widow and the personal representative of his estate, filed suit against Cook for wrongful death. The complaint sought compensatory and punitive damages. Cook was served with the complaint when he appeared at a criminal arraignment on May 28, but he failed to answer the complaint within twenty days as required by law. As a result, Hallie Rowland applied to the clerk for entry of Cook's default on June 18.

Three days after the default was entered, Rowland requested a hearing to establish damages for the default judgment. She later withdrew that request and proposed that the court enter a default judgment without a hearing. She provided the court with affidavits supporting her claims for damages. One affidavit, from an economist, calculated Rowland's lost lifetime earnings at $1,353,975.00. The other affidavit, from Rowland, claimed the estate's entitlement to $400,000 for non-economic damages, the maximum allowable award. Rowland calculated her total compensatory damages at $1,753,975, and proposed an award of punitive damages of three times that amount, or $5,261,925.

Superior Court Judge Beverly W. Cutler entered the default judgment against Cook on June 28, 1999, accepting in full Rowland's calculation of damages for a total judgment of $7,015,900.

On July 21 Cook responded to the civil suit for the first time, by moving to set aside the entry of default and the default judgment. He also then filed a peremptory challenge to the assigned judge pursuant to Civil Rule 42(c).

Judge Cutler denied Cook's peremptory challenge as untimely, and scheduled a hearing for two weeks later on Cook's motion to set aside the default judgment in order to determine "whether there is an evidentiary basis for defendant's claims." Cook sent a handwritten response to the court and Rowland's attorney stating that he would not be able to arrange for transportation from his maximum security cell in the prison to attend

the hearing; both the court and Rowland's attorney received this response the day before the scheduled hearing. Although Cook did not appear at the hearing, his motion to set aside the default judgment was denied by the superior court at that time.

Cook filed this appeal challenging two decisions of the superior court. First, Cook argues that the court improperly denied his peremptory challenge. Second, Cook argues that the court erred by not setting aside the default judgment against him.

Subsequent to the entry of all briefs in this case, Cook was found guilty of first-degree murder in connection with Rowland's death.[1]

## III. STANDARD OF REVIEW

■ We review an order refusing to set aside a default judgment for abuse of discretion.[2] "We will not find an abuse of discretion unless we are left with a definite and firm conviction on the whole record that a mistake has been made."[3] The interpretation and application of the right to disqualify a judge under Alaska Civil Rule 42(c) is a question of law that we consider de novo.[4]

## IV. DISCUSSION

### A. The Superior Court Abused Its Discretion in Refusing To Set Aside the Default Judgment against Cook.

Cook argues that the superior court erred when it refused to set aside the default judgment against him because his failure to respond was excusable neglect. The superior court denied Cook's motion at a hearing on September 15 because it found "no evidence to support Mr. Cook's claims."

The rules of civil procedure "provide relief from judgments which, for one reason or another, are unjust."[5] Civil Rule 55(e) provides that an entry of default may be set aside "[f]or good cause shown," and that a default judgment may be set aside "in accordance with Rule 60(b)." We have consistently held that disposition of a case on the merits is strongly preferred to judgment by default.[6]

### 1. Cook presented sufficient evidence of excusable neglect.

■ Civil Rule 60(b) sets forth a number of grounds that justify relief from a final judgment. Cook looks to apply the provisions of Rule 60(b)(1) which provide that a final judgment can be challenged "within a reasonable time ... not more than one year" for "mistake, inadvertence, surprise or excusable neglect."

Specifically, Cook claims that his actions showed excusable neglect. In an affidavit filed July 21 Cook described the circumstances that made it difficult for him to respond to the May 28 summons. These circumstances included: injuries suffered as a result of gunshot wounds that led to two surgeries, the administration of pain medication, and limited use of his right hand; confinement in a maximum security unit at Cook Inlet Correctional Facility where he did not have use of a phone until June 22; lack of familiarity with court rules; and preoccupation with his criminal defense. As a result of these circumstances, Cook claims that he was not able to respond to the summons before the twenty-day period had expired on June 18.

In response to Cook's claims, Rowland alleges that those claims are "incredible," that Cook shows a level of sophistication that would have allowed him to understand the significance of the complaint, and that Cook acted in bad faith, choosing to ignore the action on the belief that his assets were beyond the reach of the court.

**1.** See *State v. Cook,* 3PA–99–832 Cr. (Alaska Super., October 27, 2000).

**2.** See *Wright v. Shorten,* 964 P.2d 441, 443 (Alaska 1998).

**3.** *Id.* (quoting *Johnson v. Doris,* 933 P.2d 1139, 1142 (Alaska 1997)).

**4.** See *Barber v. Barber,* 915 P.2d 1204, 1208 n. 8 (Alaska 1996); *Staso v. State, Dep't of Transp.,* 895 P.2d 988, 990 (Alaska 1995).

**5.** *Wright,* 964 P.2d at 443.

**6.** See *Melendrez v. Bode,* 941 P.2d 1254, 1258 (Alaska 1997); *Hertz v. Berzanske,* 704 P.2d 767, 771 (Alaska 1985); *see also Wright,* 964 P.2d at 444.

We have found excusable neglect in circumstances of disability which resemble in some respects those presented by Cook. In *Gregor v. Hodges*,[7] we held that the superior court abused its discretion in refusing to set aside a default judgment on excusable neglect grounds where the defendant had a broken ankle and pneumonia and was bedridden and under the influence of pain medication. In addition, the defendant had difficulty in obtaining counsel until after the default judgment had been entered.[8]

We have also held that setting aside a default judgment may be warranted where "a pro se litigant's default results from lack of familiarity with the rules, rather than gross neglect or lack of good faith, and where the litigant is unversed in the rules of civil procedure."[9] Although Cook was later able to obtain legal assistance to respond, he was initially unable to contact an attorney during the time relevant to the default.

Based upon the circumstances presented by Cook, we find that his failure to respond to the complaint in a timely fashion is excusable. Cook was served with this lawsuit within two weeks of suffering multiple serious gunshot wounds. As a result, his claims that he underwent extensive medical treatment and was heavily medicated appear legitimate. In addition to his physical incapacitation, Cook was being held in a confined setting which allowed him minimal contact with the outside world. He was engaged in and likely preoccupied with defense of the extremely serious criminal charges filed against him. Based upon these circumstances, his neglect in responding before the superior court entered a default and awarded default judgment in his case was excusable. Rowland suggests that Cook acted in bad faith, but provides no reason to believe that Cook could profit by purposefully allowing a default to be taken

against him. The suggestion of bad faith appears to be speculation and is not supported by any evidence.

**2. Cook presented sufficient evidence to find "good cause" to set aside the default judgment.**

We have directed that in determining whether "good cause" exists to set aside a default under Civil Rule 55(e), a court should consider: "whether the defendant has established the required meritorious defense, prejudice to plaintiffs, the culpability of defendant's conduct, the length of the period of default, the size of any potential award to plaintiffs, and alternative sanctions against the defendant."[10] An evaluation of these factors weighs in favor of setting aside the default judgment against Cook.

**a. Cook has established a potential meritorious defense to the amount of damages.**

In addition to the specific showing of excusable neglect to satisfy Rule 60(b), the rules governing setting aside a default judgment generally require that the movant have a meritorious defense.[11] It is not necessary that the defendant show that, if relief is granted, the ultimate outcome *will* be different, but the defendant must demonstrate that the outcome might be different if a trial were held.[12]

Showing a meritorious defense demands "more than a perfunctory statement that a meritorious defense exists."[13] The defaulting party "may be required to show that there is a factual or legal basis for the tendered defense."[14] Cook contends that this requirement only means that a defendant must say more than the conclusory

7. 612 P.2d 1008, 1010 (Alaska 1980).

8. *Id.*

9. *Wright*, 964 P.2d at 444 (citations and quotation marks omitted); *see also Rodriguez v. Rodriguez*, 908 P.2d 1007, 1010 (Alaska 1995) (affirming that default should be set aside when pro se litigant filed answer on same day default was entered).

10. *Hertz*, 704 P.2d at 771; *Melendrez*, 941 P.2d at 1258 (applying factors to default judgment).

11. *Wright*, 964 P.2d at 445; *Melendrez*, 941 P.2d at 1258.

12. *Melendrez*, 941 P.2d at 1258.

13. *Hertz*, 704 P.2d at 772.

14. *Id.*

statement "I have a defense." But the exact standard is not so easily defined, because the amount of proof required will change based on the persuasiveness of the other equitable factors considered under Rule 55(e)'s requirement of good cause.

Rowland argues that a meritorious defense requires both a claim of defense and a factual representation supporting that claim. Rowland relies upon our finding in *Wright v. Shorten* that a meritorious defense existed where the defendant pleaded a defense and presented evidence to support the claim.[15] However, in several other cases we have not required evidence but have found a meritorious defense when facts supporting a claim of defense are merely alleged.[16] Again, the existence and quality of evidence establishing a meritorious defense is a factor to be weighed in determining whether good cause exists to set aside the default judgment.

Cook has presented two different theories to attempt to meet the meritorious defense requirement. First, Cook contends that he was acting in self defense when he shot Officer Rowland. Cook states that he was fearful because he believed Officer Rowland "was going to kill or severely injure me." But Cook was found guilty of first-degree murder for the killing of Officer Rowland.[17] Cook's conviction precludes him from presenting a merits defense to liability in the civil action.[18]

█ But Cook also claims that he has a meritorious defense against the amount of damages requested by Rowland and awarded by the superior court. To be meritorious a defense need not provide a complete defense to the action. Rather, a defense is meritorious if it will "reduce a plaintiff's award, and thereby alter the outcome of the suit."[19] Cook claims that if he were allowed to present his story of the events leading to Officer Rowland's death punitive damages might be assessed differently, or not at all, and that in any case testimony about his assets could support a reduced punitive damage award. In addition, he points out that in certain respects Rowland's award for past and future economic damages are not supported by underlying data and calculations, and thus may be vulnerable to challenge.

We agree that Cook has established a potentially meritorious defense insofar as he has shown that the amount of damages awarded against him might be lower if he were allowed to participate in a damages hearing. Therefore we conclude that although Cook may not deny liability for Officer Rowland's death, he has shown a meritorious defense with respect to damages.

### b. The award in this case is substantial.

We have held that the magnitude of a default judgment is a factor in considering whether it should be set aside. In *Hertz*, the plaintiffs were awarded $463,319.43, which led us to comment that "[u]nless there are intervening equities, a controversy concerning damages of this magnitude should be resolved on its merits whenever possible."[20] In the present case this factor is certainly present.

---

15. 964 P.2d at 445 (finding meritorious defense in a child support case where defendant claimed that he was not the real father and presented evidence of blood type).

16. *See Melendrez*, 941 P.2d at 1258 (finding that in an action to quiet title, claim that plaintiff had no right to the property and that defendant was owed more than the default judgment provided was sufficient even though presented in briefing which left "much to be desired"); *Gregor*, 612 P.2d at 1010 (finding that in response to a claim of fraudulent possession of land, it was sufficient that the defendant's answer alleged that she had paid $10,000 for the property); *Sanuita v. Hedberg*, 404 P.2d 647, 651 (Alaska 1965) (finding meritorious defense where defendant denied

plaintiff's assertions and asserted defenses of qualified privilege and truth to claim of libel).

17. *See State v. Cook*, 3PA–99–832 Cr. (Alaska Super., October 27, 2000).

18. *See Howarth v. State, Public Defender Agency*, 925 P.2d 1330, 1334–35 (Alaska 1996) ("[A] defendant convicted of a felony ... should not be allowed to claim in court in subsequent litigation that the elements essential to his conviction did not exist.").

19. *Hertz*, 704 P.2d at 772; *see also Melendrez*, 941 P.2d at 1258.

20. 704 P.2d at 773.

### c. Cook's conduct related to entry of the default was not significantly culpable.

We emphasize that the conduct relevant to this factor is not the conduct underlying the initial claim, in this case Cook's shooting of Officer Rowland (which was highly culpable), but the conduct related to entry of the default.[21] Our finding that Cook's default was the result of "excusable neglect" sufficiently establishes that his failure to answer in a timely manner was not significantly culpable.

### d. The duration of the default was minimal; setting aside the default judgment does not prejudice the plaintiff.

Default judgments are more likely to be set aside when the length of time the defendant is in default is minimal and setting aside will not result in prejudice to the plaintiff.[22]

In this case, Cook filed his motion to set aside the judgment on July 21, only twenty-three days after the default judgment had been entered. The default judgment itself followed quickly upon the events giving rise to the cause of action. Rowland has not presented this court with any argument that she will be prejudiced if the default judgment against Cook is set aside. This court has previously held that "[t]he mere fact that the nondefaulting party will be required to prove his case without the inhibiting effect of the default upon the defaulting party does not constitute prejudice which should prevent a reopening." [23]

Further, on remand, the only relevant issue will be the amount of damages. Potential prejudice to the plaintiff can be reduced by not requiring the return of any seized property unless the final judgment turns out to be less than the value of the property seized. Civil Rule 60(b) directs that a motion to set aside a default should be granted "upon such terms as are just." We believe that retention of seized property under these conditions is a just term within the meaning of this rule.

### B. Cook's Peremptory Challenge Must Be Given Effect on Remand.

Because the default judgment as to damages has been vacated by this opinion, on remand the superior court must determine damages in accordance with the provisions of Civil Rule 55(c). As explained in the separate opinions of Justice Carpeneti, in which Justice Eastaugh joins, and Justice Bryner, three members of the court have concluded that the peremptory challenge exercised by Cook must be given effect. Accordingly, on remand this case must be reassigned to a new judge in accordance with Civil Rule 42(c)(5).

### V. CONCLUSION

For the reasons stated:

1. The default judgment as to damages is VACATED under the conditions expressed herein.

2. This case is REMANDED for a determination of damages.

3. Proceedings on remand shall be conducted before a new judge.

CARPENETI, Justice, with whom EASTAUGH, Justice, joins, concurring and dissenting.

BRYNER, Justice, concurring.

FABE, Chief Justice, with whom MATTHEWS, Justice, joins, concurring in part and dissenting in part.

CARPENETI, Justice, concurring and dissenting, with whom EASTAUGH, Justice, joins.

I agree with the opinion of the court that this case should be remanded for further proceedings before another judge. But I disagree as to how this result is reached. I write separately to set out (1) why Cook's peremptory challenge must be given effect

---

21. *See Melendrez,* 941 P.2d at 1258 (finding defendant culpable for default because he attempted to avoid service).

22. *See id.; Hertz,* 704 P.2d at 773.

23. *Hertz,* 704 P.2d at 773 (citation and quotations marks omitted).

and (2) why a new judge on remand—not this court—should decide all matters remaining in this case, including the fate of the motion to set aside the default.

### 1. The Superior Court Erroneously Denied Cook's Peremptory Challenge as Untimely.

■ Cook argues that the superior court erred when it dismissed his peremptory challenge as untimely. Litigants have a statutory right to peremptory disqualification of a judge under AS 22.20.022,[1] and Alaska Civil Rule 42(c) controls the procedure and scope of such disqualification in civil cases.[2] Because Cook filed his peremptory challenge in accord with the provisions of that rule, his challenge was proper.

Rule 42(c) provides: "[i]n an action pending in the Superior or District Courts, each side is entitled as a matter of right to a change of one judge and of one master."[3] The timeliness provisions for a peremptory challenge are contained in subsection (3):

> *Timeliness*. Failure to file a timely notice precludes change of judge as a matter of right. Notice of change of judge is timely if filed before the commencement of trial and within five days after notice that the case has been assigned to a specific judge. *Where a party has been served or enters an action after the case has been assigned to a specific judge*, a notice of change of

judge shall also be timely if filed by the party before the commencement of trial and within five days after a party appears or files a pleading in the action.[4]

Cook's challenge falls under the second part of the rule, because he was "served . . . after the case ha[d] been assigned to a specific judge." Cook was initially served on May 28, after Judge Cutler had been assigned to the case on May 27.[5] As a result, Rule 42(c)(3) required Cook to file his challenge before trial and within five days of an appearance or filing in the action.[6]

The superior court ruled that Cook's motion was not timely because the normal time limits of Rule 42(c)(3) were not available when a party had not entered a timely response to the complaint. The superior court's interpretation reads Rule 42(c)(3)'s five-day window after an appearance or pleading as applying only to a timely appearance or pleading. The court said, "a party must timely enter an action in order to peremptorily challenge the judge within 5 days of that entry." The superior court did not cite to the rules or case law to support its interpretation of the rule,[7] but relied upon the argument that bad policy would result from allowing peremptory challenges after a default judgment: "[I]t would encourage other litigants to default, await a ruling on the merits, and then challenge the judge and move to vacate the default."

---

**1.** AS 22.20.022(a) provides:

> If a party or a party's attorney in a district court action or a superior court action, civil or criminal, files an affidavit alleging under oath the belief that a fair and impartial trial cannot be obtained, the presiding district court or superior court judge, respectively, shall at once, and without requiring proof, assign the action to another judge. . . .

**2.** *See Staso v. State, Dep't of Transp.*, 895 P.2d 988, 990 (Alaska 1995).

**3.** Alaska R. Civ. P. 42(c)(1).

**4.** Alaska R. Civ. P. 42(c)(3) (emphasis added).

**5.** The superior court's own ruling implies that the second part of the rule applies. The superior court notes that Cook's challenge would be timely if filed within five days "of appearing or filing a pleading in the action."

**6.** *See Karen L. v. Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 953 P.2d 871, 879–80 (Alaska 1998) (permitting peremptory challenge filed by state along with its initial appearance almost three weeks after it had been served with summons, because second part of Rule 42(c)(3) applied as state had been served after judge had been assigned).

**7.** There are no Alaska cases on point with regard to whether a peremptory challenge can be raised after a default, and cases from other jurisdictions are only minimally instructive. *See State ex rel. Frohnmayer v. Low*, 105 Or.App. 357, 804 P.2d 1217, 1218–19 (1991) (holding that challenge to judge after entry of default was not timely under Oregon rules which required affidavit be filed prior to final determination of cause or prior to ruling on petition or motion); *Olsten Staffing Servs., Inc. v. D.A. Stinger Servs., Inc.*, 921 P.2d 596, 600–01 (Wyo.1996) (holding that challenge to judge is permissible after entry of default, but might not extend to default judgment).

Cook's peremptory challenge falls within the plain language of Rule 42(c)(3), because his challenge was filed before any trial was held in the case and on the same day as his first filing or appearance in the case. Moreover, allowing Cook to raise a peremptory challenge after entry of default does not promote bad policy. While the superior court was concerned that allowing a peremptory challenge after a default would encourage litigants to default, neither the superior court nor Rowland identified any possible advantage that might be gained by a party in allowing default to be taken against itself, and I can think of none.

Cook points to our decision in *Staso v. State, Department of Transportation*[8] to support his position that allowing his peremptory challenge will not lead to abuse. In that case, we held that a party has the right to peremptorily challenge the judge in a new case filed after an identical case is dismissed, even if the party had exercised its peremptory challenge in the earlier, dismissed case.[9] Despite the argument by the state that allowing such challenges would encourage judge shopping by parties who simply allowed their cases to be dismissed, we observed that other civil rules provided adequate sanctions against bad faith dismissal and refiling of cases. Specifically, we noted that the threat of sanctions as provided in the Civil Rules against a party who refiles a dismissed case "afford[s] courts the tools necessary to deter litigants from judge shopping."[10]

8. 895 P.2d 988 (Alaska 1995).

9. *Id.* at 992.

10. *Id.*

11. *See generally Mundt v. Northwest Explorations, Inc.,* 963 P.2d 265, 270 (Alaska 1998) ("[Northwest's] recourse is to show the new judge that [the challenged judge] has already decided any issues that Mundt tries to reopen. The court can readily dismiss any attempt to relitigate issues as barred by the law of the case....").

12. It is also possible that a defendant could move under Civil Rule 77(k) to have the new judge reconsider the previous judge's decision to grant the default judgment. However, such a maneuver would not easily provide a favorable result

Similar controls exist in the rules to protect against any theoretical abuse considered here. There are at least two ways in which the current rules would dissuade parties who might attempt, as the superior court feared, to sit by and allow a default, and then disqualify the judge.

First, parties who invite a default face the additional burden of successfully moving to set aside a default judgment before earning a trial on the merits with a different judge. A peremptory challenge entered after a default judgment would not automatically nullify that judgment.[11] Instead, a defendant would have to proceed before a new judge with a motion to set aside a default judgment under the requirements contained in Civil Rule 60(b).[12] Setting aside a default judgment requires a defendant to show good cause, including a meritorious defense,[13] as well as some form of mistake, fraud, new evidence, or excusable neglect.[14] I can perceive no reason a defendant would purposefully allow a default to be taken against himself or herself when there is no advantage and the defendant would be required to make a positive showing to set aside the default.

Second, if for any reason a party were to invite a default in order to subsequently exercise a peremptory challenge, that party would be guilty of bad faith and would risk losing the motion to set aside the default for that reason. A plaintiff who can establish that a defendant has intentionally defaulted as a way to engage in judge shopping can argue that the default judgment should not be set aside because the defaulting party has acted in bad faith.[15] In *Melendrez v. Bode,*[16]

for the defendant. It is likely that the judge assigned following a peremptory disqualification would be reluctant to reconsider the decision to grant a default judgment by another judge, especially when there are specific provisions under which such a judgment can be set aside in Rule 60(b).

13. Alaska R. Civ. P. 55(e); *Wright v. Shorten,* 964 P.2d 441, 445 (Alaska 1998).

14. Alaska R. Civ. P. 60(b).

15. *Hertz v. Berzanske,* 704 P.2d 767, 771 (Alaska 1985) (directing a court to consider the culpability of defendant's conduct), *superceded by statute on other grounds as noted in McConkey v. Hart,* 930 P.2d 402, 407 n. 4 (Alaska 1996).

16. 941 P.2d 1254 (Alaska 1997).

we affirmed the denial of a motion to set aside because the defendant had acted in bad faith by attempting to avoid service and then failing to respond to the summons "claiming, incredibly, that he was unaware there was a suit pending against him."[17] We denied the motion to set aside primarily because of Melendrez's culpable behavior.[18]

In fact, in this case, Rowland has alleged that Cook acted in bad faith. Rowland claims that Cook's failure to respond to the complaint in a timely fashion was the result of bad faith. Allowing Cook to maintain his peremptory challenge would not defeat Rowland's right to claim that the default should stand because Cook acted in bad faith.

In sum, Cook's peremptory challenge satisfied the language of Civil Rule 42(c)(3) because it was filed before any trial was held and at the same time that he appeared and filed a pleading in the case. Recognizing his peremptory challenge does not promote bad policy. Our case law provides sufficient deterrent against judge shopping.

### 2. The New Judge Should Decide All Remaining Matters, Including Cook's Motion To Set Aside the Default Judgment.

Since the superior court erroneously denied Cook's peremptory challenge, decisions made by that court subsequent to the denial are void.[19] The valid exercise of a peremptory challenge divests the challenged judge of authority to act in the case. As we stated in *Channel Flying, Inc. v. Bernhardt*,[20]

The only meaning that can be given to the requirement [in AS 22.20.022(a)] that the matter be assigned "at once and without requiring proof" to another judge, is that when a timely and proper affidavit is filed the judge concerned is at once disqualified from acting as a judge in the particular action or proceeding. When [s]he is disqualified [s]he no longer possesses the qualities ... of power, capacity, fitness or competency to proceed further. In short, when a proper affidavit has been timely filed, the judge involved is without power or jurisdiction to take any further action in the proceeding.[21]

We have consistently followed this rule.[22] No reason appears in this case to depart from it. Therefore, Cook's motion to set aside the default judgment should be remanded to the superior court for assignment to a new judge. That new judge should decide all matters arising after the peremptory challenge was made.

The decision that the challenge was timely does not invalidate the default judgment itself, which was entered by the superior court before Cook filed his peremptory challenge. Since the superior court was without jurisdiction to rule on the motion to set aside the default judgment, Cook's appeal of that decision is moot. There is, therefore, no reason for this court to rule on any issue—including the pending motion to set aside the default— that is not properly before it. For this reason, I dissent from today's per curiam opinion to the extent it reaches the question of setting aside the default judgment. Instead,

**17.** *Id.* at 1258.

**18.** *Id.*

**19.** *See Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570, 574 (Alaska 1969) ("In short, when a proper affidavit has been timely filed, the judge involved is without power or jurisdiction to take any further action in the proceeding."); *see also McCracken v. State*, 521 P.2d 499, 510 (Alaska 1974); *Pope v. State*, 478 P.2d 801, 804 (Alaska 1970).

**20.** 451 P.2d 570 (Alaska 1969).

**21.** *Id.* at 574.

**22.** For example, in *Hartford Accident & Indem. Co. v. State for Use and Benefit of Consol. Constr. Co.*, 498 P.2d 274 (Alaska 1972), we stated that "[u]nder AS 22.20.022 the filing of a timely affidavit in compliance with the statute operates to bar the judge from proceeding any further in the matter other than transferring the case to another judge." *Id.* at 275. We concluded that "if petitioners' affidavit was timely filed, the judge involved is without power or jurisdiction to proceed further with the action." *Id.* In *Dean v. Firor*, 681 P.2d 321 (Alaska 1984), we stated that "[t]he effect of a peremptory disqualification of a master is that the master loses the capacity to proceed further." *Id.* at 325. *See also Morgan v. State*, 635 P.2d 472, 478–79 (Alaska 1981); *Pope*, 478 P.2d at 804.

that matter should be resolved by the superior court on remand.

BRYNER, Justice, concurring.

I join the per curiam opinion in holding that Cook's default judgment must be set aside and the case remanded for a determination of damages. I also join Justices Eastaugh and Carpeneti in concluding that Cook's peremptory challenge must be treated as timely on remand; but I set out my reasons separately, because they differ from those adopted in Justice Carpeneti's concurring opinion.

Civil Rule 42(c)(3) allows a party who "enters an action after the case has been assigned to a specific judge" to file a peremptory challenge at any time "before the commencement of trial and within five days after a party appears." I would apply the literal terms of this rule to Cook's situation.[1]

Cook's motion to set aside the judgment under Rule 60(b) did not commence a new action for purposes of the peremptory challenge rule; rather, it sought to reopen the earlier action, which already had been closed by final judgment. And since Cook had never appeared in that action before it was closed, he had no right to enter it merely by filing a motion. Instead, his Rule 60(b) motion essentially sought leave to reopen *and* enter the action. Because Cook was not yet entitled to enter the action, his notice of peremptory challenge was not effective when it was filed and did not bar Judge Cutler from presiding over his motion. In short, unlike Justices Eastaugh and Carpeneti, I would not read Rule 42 as having given Cook the right to demand that a new judge hear his Rule 60(b) motion for relief from the default judgment.

But now that satisfactory grounds have been found for relief under Rule 60(b), Cook is entitled to reopen and enter the original action. And because the original judgment has been set aside, he now unquestionably qualifies as a party entering the action "before the commencement of trial." Accordingly, I would read Rule 42 to require that Cook's peremptory challenge be honored as timely on remand.[2] I favor this reading of the rule over those advanced in this court's two other separate opinions because I think that it is textually more faithful to the rule and, unlike the dissenting opinion's reading, avoids conflict with our recent decision in *Mundt v. Northwest Explorations, Inc.*[3]

I thus would set aside the default judgment, would remand for further proceedings as directed in the per curiam opinion, and would require the case to be reassigned to another judge on remand.

FABE, Chief Justice, with whom MATTHEWS, Justice, joins, concurring in part, and dissenting in part.

Although I agree that the default judgment must be set aside and the case remanded for a determination of damages, I disagree with the majority's holding today that Cook's peremptory challenge of Judge Cutler was timely. In my view, this case should be remanded for a trial on damages before Judge Cutler, the originally assigned trial judge.

Rule 42(c)(3) prevents a party from exercising a peremptory challenge against the assigned trial judge after a default judgment has been entered. That rule provides that a notice of change of judge is timely "if filed by the party before the commencement of tri-

---

**1.** *Cf. Gardner v. State*, 702 P.2d 250, 251 n. 4 (Alaska App.1985) (observing that a literal interpretation of the criminal rule providing for peremptory challenges is "in keeping with the general principle that disfavors interpretations resulting in findings of waiver").

**2.** Even if Cook's peremptory challenge were untimely, I would be inclined to hold that Rule 42 should be relaxed, and the untimeliness excused, upon a finding of grounds for relief under Rule 60(b). *Cf. Riley v. State*, 608 P.2d 27, 29 (Alaska

1980) (holding, in the criminal context, that "[t]he right to peremptorily challenge a judge is sufficiently important so that it should not be lost by inaction before there is an opportunity to confer with an attorney").

**3.** 963 P.2d 265, 268 (Alaska 1998) (holding that "nothing in AS 22.20.022 or Rule 42(c) prevents an intervenor who enters a case after an initial judgment and appeal from exercising the right to peremptorily change judges").

al." [1] I believe that the term "trial" must be interpreted to encompass the concept of final resolution of the case, including a default judgment.[2]

Moreover, in many default cases, the judge holds a damages hearing prior to entry of a default judgment, a proceeding that is tantamount to a "trial" on the issue of damages.[3] And if either party has requested a jury trial prior to entry of default, the issue of damages must be tried to a jury, despite one party's absence at trial.[4] If Judge Cutler had held a damages hearing, listening to the same witness who prepared the damages affidavit in this case, Cook's peremptory challenge would not have been timely filed as it would have occurred after "trial." The right to file a peremptory challenge after a default judgment should not depend on whether the trial court has determined the amount of damages based on the testimony in an affidavit or that of a live witness.

As a result of the court's decision today, careful practitioners will request a damages hearing or "trial" in every future default case, to avoid the possibility that a defendant, unhappy with the result of the case, will enter an appearance, preempt the judge, and move to set aside the default judgment. This will result in time-consuming and unnecessary hearings in cases where the amount of damages is easily ascertainable from documentary evidence.

For these reasons, I respectfully disagree with the majority's view that Cook's peremptory challenge was timely and should be given effect. I would remand for a damages trial before Judge Cutler.

1. Alaska Civil Rule 42(c)(3) states:

   *Timeliness*. Failure to file a timely notice precludes change of judge as a matter of right. Notice of change of judge is timely if filed before the commencement of trial and within five days after notice that the case has been assigned to a specific judge. Where a party has been served or enters an action after the case has been assigned to a specific judge, a notice of change of judge shall also be timely if filed by the party before the commencement of trial and within five days after a party appears or files a pleading in the action.

2. A default judgment is a final judgment that terminates litigation and decides a dispute. *Hertz v. Berzanske*, 704 P.2d 767, 770 (Alaska 1985). *See also Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981) (holding that a default judgment and subsequent motion to set aside constitute a final judgment for purposes of res judicata).

3. Alaska Civil Rule 55(c)(1) provides in part:

   If, in order to enable the court to enter a judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

4. *Hall v. Morozewych*, 686 P.2d 708, 711–12 (Alaska 1984).