NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

PABLO DIAZ-FONTAO, )
)
Appellant, )
)
v. )
)
MARTHA ANDRADE, )
)
Appellee. )
)

Supreme Court No. S-18388

Superior Court No. 3AN-20-07233 CI

<u>MEMORANDUM OPINION
AND JUDGMENT</u>*

No. 1990 – August 30, 2023

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Joe P. Josephson, Josephson Law Offices, LLC, Anchorage, for Appellant. Taylor R. Thompson, Thompson Law Group, Anchorage, for Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

## I.    INTRODUCTION

A husband failed to respond to his wife's divorce complaint and summons for more than five months. The court entered default against the husband, dissolved the marriage, and divided the couple's property. The then-ex-husband retained an attorney and moved to overturn the property division, asserting that he had limited English proficiency and had not understood the divorce paperwork. He also claimed that the

---

\*    Entered under Alaska Appellate Rule 214.

property division was inequitable. After four days of evidentiary hearings, the court denied the ex-husband's motion to overturn the property division.

The ex-husband appeals, contending that his neglect in failing to respond to the divorce complaint and summons was excusable and that the superior court therefore erred in declining to set aside the default judgment. For the reasons below, we affirm the superior court's denial of the motion to set aside the property division.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Pablo Diaz-Fontao and Martha Andrade married in 2003 in Anchorage. Long prior to that, in the early 1990s, Pablo had fled his home country of Cuba for Florida. About a year after he arrived in Florida, Pablo married Maria Perez. Pablo claims that he did not know this marriage happened. His understanding was that he only submitted an "application to get married, but . . . never completed it" and "never receive[d] any documents showing [him] that [he] was indeed married." Nevertheless, a Florida marriage certificate signed by a deputy clerk indicates that Pablo married Maria Perez on January 7, 1993.

Pablo spent nearly ten years in Florida. In 2002 he moved to Alaska to work in crab fisheries. In 2003 he came to Anchorage, where he met and married Martha Andrade that year.

Pablo claims he only found out about his Florida marriage to Maria Perez in 2006, when Martha discovered some IRS documents and informed Pablo of what she had learned. Martha helped Pablo retain an Anchorage attorney and obtain a divorce, which was finalized in April 2006. Martha obtained legal advice that her marriage with Pablo was valid and thus she did not need to re-marry Pablo or take other actions to validate their marriage.

Martha and Pablo remained together until separating in March 2020. Martha then advised Pablo that she was seeking a divorce, that she had retained an attorney, that Pablo had to fill out paperwork, and that he should retain a lawyer.

**B.      Proceedings**

Martha filed a complaint for divorce on July 27, 2020.  She and Pablo had discussed her plan to dissolve the marriage in June, and she served Pablo personally with the divorce complaint, summons, and related paperwork through a process server on August 11.  When she met with Pablo in September 2020, he confirmed that he had received the complaint and was going to get a lawyer.  Martha urged him to respond to the complaint multiple times.  But Pablo never answered the complaint.

On October 8 Martha applied for default.  Pablo was properly served with Martha's default application that day, but he still failed to respond.  The clerk entered default on October 20.  The court held a default hearing on November 17, 2020, and Pablo did not attend or appear.  After the hearing, on November 30, 2020, Martha's attorney sent Pablo both the proposed Qualified Domestic Relations Orders (QDROs) dividing the couple's retirement accounts and the proposed Findings of Fact and Conclusions of Law dividing Martha and Pablo's property.  Pablo still did not respond or attend the default divorce hearing.  The court issued a divorce decree dissolving Pablo and Martha's marriage on December 2, 2020.  It also incorporated the Findings of Fact and Conclusions of Law and QDROs dividing Martha and Pablo's property and debts.  The court divided each of the parties' retirement accounts equally and held the parties responsible for debts in their own names.  The court did not value or divide the condominium that Martha maintained was her separate property.

After receiving the default paperwork Pablo retained an attorney and on December 30 moved to set aside the default property division under Alaska Civil Rule 60(b)(1), based on mistake, inadvertence, or excusable neglect.  Pablo attributed his failure to respond to not being "fully functional" in English and not understanding what was transpiring in the case.

Martha opposed, noting Pablo's failure to appear or respond since the case was initiated on July 27, over five months prior.  She contended that there was "no reason to re-open the case to litigate the issues between the parties, as [Pablo] ha[d] not

shown good cause as to his prior failure to litigate" after he "simply refused to engage in the process." She also argued that he had failed to set forth a meritorious defense demonstrating that the case's outcome might differ if the case was reopened. The court denied Pablo's motion without prejudice on January 25, 2021, indicating that Pablo could file "another motion that shows a 'meritorious defense,' supported by admissible evidence."

Pablo filed another motion four months later, arguing first that he had difficulties understanding English and did not understand the legal process and property rights at issue; second, that the parties' marriage was void and that all orders on marital property thus should be void; and third, that the court needed to reconsider the property division because, among other things, Pablo believed Martha's condominium had at least partially transmuted into marital property that needed to be accounted for. He also submitted emails from four coworkers and friends attesting that his English was not strong and that they often translated documents for him.

Martha once again opposed Pablo's motion. She argued that Pablo "failed to appear despite notice, opportunity, request, and urging." In response to Pablo's arguments, she contended that the couple's marriage satisfied Alaska's putative marriage requirements and thus was valid, and that no property had transmuted during the marriage. She also attached three letters from friends indicating that Pablo spoke and understood English well.

The court held a series of evidentiary hearings centered on the "issue [of] whether the December 2020 default should be set aside." At the final hearing, the court made findings on the record. It noted three Rule 60(b) subsections, trial permit a judgment to be set aside for the following reasons: (1) "mistake, inadvertence, surprise, or excusable neglect"; (4) a void judgment; and (6) "any other reason justifying relief from the operation of the judgment." It noted that the moving party has to "prove a meritorious defense." Then it denied Pablo's Rule 60(b) motion because it found that he had not met his burden of proof "as to any of these parts or the meritorious defense."

The court first acknowledged that Pablo came to the United States from Cuba 30 years ago and to Alaska 20 years ago, after having worked in the United States since 1992. It also noted that he "speaks some English, but reads and writes little English."

Turning to the Rule 60(b) subsections, the court first found Pablo and Martha's marriage satisfied the requirements of Alaska's putative marriage law[1] and that Pablo therefore had not established a void judgment and entitlement to relief under Rule 60(b)(4).

Regarding Rule 60(b)(1), the court found that "there was no mistake, there was no inadvertence, there was no surprise. Nobody's really alleging that." The court found that "the facts clearly establish . . . neglect by" Pablo, but determined that Pablo's neglect was not excusable. It noted that Pablo "was personally served by a process server with the complaint" and cited evidence that Pablo received the complaint and other documents "in one form or another three times with the default packet." It also credited Martha's account that she told Pablo that she was filing for a divorce, that she had an attorney, and that he should speak with an attorney as well. The court observed that Pablo decided not to go to an attorney, that he instead took the documents to "a friend or a couple of friends over time," and that, on his friends' advice, "he did nothing." The court also noted that Pablo had already obtained a divorce once in Alaska and had retained an Alaska attorney to help him with that prior divorce. It

---

[1]     AS 25.05.051 ("If, during the lifetime of a husband or wife with whom a marriage is still in force, a person remarries and the parties to the subsequent marriage live together as husband and wife, and one of the parties to the subsequent marriage . . . is without knowledge of the former marriage, then after the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, they are legally married from the time of removal of the impediment."). Here, both parties claimed to lack knowledge of Pablo's first marriage, and they continued to live together as husband and wife after they discovered the first marriage and Pablo obtained a divorce.

acknowledged Pablo's argument that he did not think he could afford an attorney, but reasoned that many litigants in civil matters represent themselves and the inability to retain counsel did not justify simply ignoring this divorce action. The court characterized Pablo's failure to participate as the result of a series of poor decisions and reiterated that those poor decisions did not establish excusable neglect.

The court then considered whether Rule 60(b)(6) applied, particularly whether Pablo's proficiency, or lack thereof, with English constituted "any other reason justifying relief" from the judgment at issue. The court found that Pablo had "at least a fundamental working knowledge" of spoken English and noted that Pablo conversed with all trial witnesses using English, had previously completed important transactions with documents in English, and used English at work. The court acknowledged that Pablo could not read and write English as well as he could speak it, but concluded that this did not justify ignoring his divorce paperwork, particularly since Pablo already had been divorced in Alaska.

Finally, the court determined that Pablo had not proven a meritorious defense that would justify reopening the divorce and property division litigation.

Pablo appeals, contending that the court erred in determining that his neglect of the divorce action was not excusable and denying him relief under Rule 60(b).[2]

### III. STANDARD OF REVIEW

We review legal determinations made within a trial court's division of property de novo.[3] We review for abuse of discretion the denial of a Rule 60(b) motion,

---

[2]    On appeal Pablo does not challenge the superior court's decision that his marriage to Martha was valid and that he was not entitled to relief due to a void judgment under Rule 60(b)(4).

[3]    *Hicks v. Pleasants*, 158 P.3d 817, 820 (Alaska 2007) (citing *Leis v. Hustad*, 22 P.3d 885, 887 (Alaska 2001)).

the entry of a default judgment, and the refusal to set aside a default judgment.[4]  We find an abuse of discretion if the decision is "arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive."[5]

## IV.   DISCUSSION

Pablo argues that the superior court should have granted him relief under Rule 60(b)(1) because his status as an immigrant with limited English ability renders his failure to litigate his divorce excusable neglect.  We disagree.  Under these circumstances, the superior court did not abuse its discretion when it determined that Pablo's neglect of the divorce action was not excusable.[6]

Rule 60(b)(1) provides that a court may relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect.[7]  Alaska Civil Rule

---

[4]     *Melendrez v. Bode*, 941 P.2d 1254, 1256 (Alaska 1997) (citing *Murat v. F/V Shelikof Strait*, 793 P.2d 69, 73 (Alaska 1990); *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378-79 (Alaska 1982)); *see Schindler v. Schindler*, 474 P.3d 648, 649 n.2 (Alaska 2020).

[5]     *Del Rosario v. Clare*, 378 P.3d 380, 383 (Alaska 2016) (quoting *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016)).

[6]     Thus concluding, we do not reach the question of whether Pablo presented a meritorious defense.  Pablo asserts other arguments that we do not reach here.  Pablo asserts that he should have been granted an additional evidentiary hearing.  But he waived that argument by failing to substantively brief it.  *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062 (Alaska 2005) ("We do not consider arguments that are inadequately briefed.").  Regardless, Pablo has not shown how an additional evidentiary hearing – beyond the four days of hearings he had – would make any difference.  And Pablo asserts in his reply brief that the property division was grossly inequitable.  But we have a "well-established rule that issues not argued in opening appellate briefs are waived." *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010).  This is because "the failure to raise an argument in an opening brief leaves the other party with no notice or opportunity to respond to the argument." *Id.* at 887-88.

[7]     Alaska R. Civ. P. 60(b)(1).

55(e) provides that the court may set aside a default entry for good cause, and likewise may set aside a default judgment in accordance with Rule 60(b).[8]

Particularly when a self-represented litigant is involved, we have held that setting aside a default judgment may be warranted when the default stems from "lack of familiarity with the rules" or where the self-represented litigant is unversed in the applicable processes.[9] But we have cautioned repeatedly that "gross neglect or lack of good faith" are not proper grounds for setting aside a default judgment, even for a self-represented litigant.[10]

Pablo suggests that if we affirm the denial of Rule 60(b) relief, other immigrants with limited English proficiency "will . . . be placed at a serious disadvantage." At first blush, he seems to raise issues similar to those that we addressed in *Crafts v. Morgan*, where we vacated a property division given one spouse's lack of understanding of the terms of the parties' dissolution.[11]

Despite some parallels, though, *Crafts* is not dispositive here. The issue in *Crafts* was whether an active participant in a divorce fully understood "the nature and consequences" of signing a dissolution under AS 25.24.230(b)(1).[12] There, both spouses helped fill out the dissolution agreement papers (six pages of court forms) and signed them voluntarily, and they both participated in the drafting of a property division

---

[8]     Alaska R. Civ. P. 55(e).

[9]     *Cook v. Rowland*, 49 P.3d 262, 265 (Alaska 2002) (quoting *Wright v. Shorten*, 964 P.2d 441, 444 (Alaska 1998)).

[10]     *Wright*, 964 P.2d at 444 (setting aside default because self-represented litigant's failure to answer not due to "bad faith or gross neglect"); *see also Kennedy v. First Nat'l Bank of Fairbanks*, 637 P.2d 297, 297-98 (Alaska 1981) (same); *Sanuita v. Hedberg*, 404 P.2d 647, 651 (Alaska 1965) (same).

[11]     *Crafts v. Morgan*, 776 P.2d 1049, 1053-54 (Alaska 1989).

[12]     AS 25.24.230(b)(1) (permitting court to grant final dissolution pursuant to spouses' written agreement if "the spouses understand fully the nature and consequences of their action").

agreement.[13]  But the wife relied on her husband's representations to understand what was being agreed to, which the husband used to his advantage.[14]  Indeed, the husband advised the wife *not* to seek an attorney and urged her to sign the property division agreement, despite the fact that she did not fully understand her property rights.[15]

These circumstances are not comparable to Pablo's.  Unlike the husband in *Crafts*, Martha advised Pablo that she was seeking an attorney and encouraged him to seek one as well.  Nothing in the record suggests Martha ever deceived Pablo about the nature of the divorce action she filed or discouraged him from litigating his position.  And unlike the wife in *Crafts*, Pablo considered whether to participate in the proceedings overall and decided *not* to participate.[16]

In fact, efforts were made and offered in Spanish to help Pablo understand his legal situation.  And by at least September 2020, Pablo understood his legal circumstances sufficiently to confirm that that he had received the divorce complaint and express his intention to get a lawyer.  Given the court's extensive factual findings, which are supported by the record, we conclude that it was not an abuse of discretion for the court to reject Pablo's argument that his neglect of the divorce case was excusable.[17]

---

[13]    *Crafts*, 776 P.2d at 1050-51.

[14]    *Id.* at 1050-54.

[15]    *Id.* at 1054.

[16]    *Id.* at 1050-52.

[17]    Pablo also cites Rule 60(b)(6), by which a court may grant relief from judgment for "any other reason justifying relief from the operation of the judgment." But "[a] party can invoke subsection (b)(6) only if none of the other five clauses apply and 'extraordinary circumstances' exist." *Powell v. Powell*, 194 P.3d 364, 371 (Alaska 2008) (per curiam) (alteration in original) (quoting *Juelfs v. Gough*, 41 P.3d 593, 597 (Alaska 2002)).  Here, Pablo asserts grounds for relief under Rule 60(b)(1)'s provision on "excusable neglect."  A failed Rule 60(b)(1) argument does not create an

Pablo also contends that because his decision not to respond to Martha's divorce complaint was based on the poor advice of a recently divorced friend, the superior court should have granted him relief under Rule 60(b)(1). We disagree. The court was within its discretion to rule that Pablo's choice not to participate based on a friend's poor advice was not excusable, particularly given that this is Pablo's second divorce in Alaska.

Pablo cites *Gregor v. Hodges* for the proposition that a default judgment may be reversed in certain circumstances in which a litigant failed to participate.[18] *Gregor* involved a default judgment entered against a defendant accused of fraudulently obtaining and then refusing to return a piece of land.[19] In *Gregor* the default judgment was set aside for excusable neglect because, at the time of service, the defendant was bedridden with a broken ankle and pneumonia and under the influence of prescribed pain medication.[20] Due to her condition she did not expect a lawsuit or initially realize the importance of the summons and complaint.[21] Once she realized the importance of the papers, she immediately took action to address both the lawsuit and the subsequent default.[22]

---

extraordinary circumstance for relief under Rule 60(b)(6); we have consistently held that "[a]lthough clause six is a 'catch-all' provision, relief under clause six is not available unless the other clauses are inapplicable." *Williams v. Crawford*, 982 P.2d 250, 255 n.16 (Alaska 1999); *see also Chena Obstetrics & Gynecology, P.C. v. Bridges ex rel. S.B.*, 502 P.3d 951, 963-64 (Alaska 2022) (declining to apply Rule 60(b)(6) to failed Rule 60(b)(1) "excusable neglect" claim); *Vill. of Chefornak v. Hooper Bay Constr. Co.*, 758 P.2d 1266, 1270-71 (Alaska 1988) (same).

[18] 612 P.2d 1008 (Alaska 1980) (per curiam).

[19] *Id.* at 1009.

[20] *Id.* at 1010.

[21] *Id.*

[22] *Id.*

Pablo argues that, like Gregor, he did not understand the importance of the divorce documents he received. And like Gregor, he also began taking further steps to pursue his case only after receiving his default paperwork. But the similarity between Pablo's case and *Gregor* ends there. Unlike Gregor, who was incapacitated and contacted three attorneys upon realizing the importance of the papers she had received,[23] Pablo understood that he had been served with a divorce complaint and nevertheless accepted his friend's assessment that he need not do anything because there was "no disputing any properties or any children" and the parties did not "have anything commonwealth." Soliciting legal advice from a non-lawyer is not analogous to being medically incapacitated. And as Martha notes and the record reflects, Pablo had been warned that Martha intended to file for divorce; received multiple forms of notice regarding the divorce, what Martha sought, and how he could respond; was not ill; and simply chose not to participate based on his friend's advice.

Pablo also relies upon our decision in *Wright v. Shorten*, where we reversed the trial court's refusal to find excusable neglect under Rule 60(b)(1) in the case of a self-represented litigant who filed a non-compliant response to a complaint.[24] But in *Wright*, unlike here, the self-represented litigant made an effort to respond to the documents he was served, timely filing a letter that substantively responded to the complaint's allegations.[25] Here, although Pablo may have been "unversed in the rules of civil procedure,"[26] he made no attempt to respond to Martha's complaint or default motion until months later, after the court had rendered its decision. This was in spite of the fact that Martha informed Pablo in multiple ways that she was filing for divorce, that she was working with an attorney, and that he should also speak with an attorney.

---

[23] *Id.*

[24] *Wright v. Shorten*, 964 P.2d 441, 444 (Alaska 1998).

[25] *Id.*

[26] *See id.*

Given these facts, Pablo's failure to respond is more analogous to "gross neglect" than to mere "lack of familiarity with the rules." Neither *Gregor* nor *Wright* convinces us that the court abused its discretion.

## V.    CONCLUSION

For the reasons above, we AFFIRM the superior court's denial of the motion to overturn the default judgment.